**WESTCO GROUP, INC., Plaintiff,**

v.

**K.B. & ASSOCIATES, INC., Defendant.**

No. 5:00–CV–2019.

United States District Court, N.D. Ohio, Eastern Division.

Jan. 24, 2001.

Paul M. Higgins, William M. Webner, Sughrue, Mion, Zinn, Macpeak & Seas PLLC, Washington, DC, Robert D. Wilson, Robert D. Wilson Co., LPA, Cleveland, OH, for Westco Group, Inc., dba Mattress Warehouse, Plaintiff.

Christopher B. Fagan, Fay, Sharpe, Beall, Fagan, Minnich & McKee, Cleveland, OH, for K.B. Associates, Inc., Defendant.

## ORDER

GWIN, District Judge.

With this order, the Court rules on the parties' cross-motions for summary judgment [Docs. 38 & 39]. For the reasons set forth below, the Court grants Plaintiff Westco Group, Inc.'s motion for summary judgment, and denies Defendant K.B. & Associates' motion for summary judgment.

### I.

This case involves a dispute between two mattress retailers. Plaintiff Westco, Inc. ("Westco"), operates more than fifty retail mattress stores featuring the Mattress Warehouse trademark and trade name. Defendant K.B. & Associates, Inc. ("K.B. & Associates"), operates approximately

fourteen retail stores using this trademark and trade name. Westco says K.B. & Associates is using the trademark and trade name in violation of its licensing agreement with Westco, as well as in violation of federal and state laws preserving Westco's right to control the use of the trademark and trade name. K.B. & Associates denies these claims and asserts two counterclaims. In these counterclaims, K.B. & Associates seeks a declaratory judgment that it has not infringed the trademark and trade name and that Westco has abandoned the trademark and trade name.

In 1983, Mattress Warehouse, Inc., registered the Mattress Warehouse trademark. Shortly thereafter, Defendant K.B. & Associates began using the Mattress Warehouse trademark and trade name under a franchise agreement with Mattress Warehouse, Inc. In 1989, in settlement of pending federal litigation, Mattress Warehouse, Inc. terminated this franchise agreement and granted K.B. & Associates a license to use the trademark and trade name in West Virginia and in certain Ohio counties.

Following this 1989 agreement, Mattress Warehouse, Inc., assigned its interest in the Mattress Warehouse trademark and trade name to Jer–Wil, Inc. ("Jer–Wil"). Then, in 1993, Jer–Wil assigned its interest in the trademark and trade name to Plaintiff Westco.

Although it had the right to use the trademark and trade name in West Virginia and portions of Ohio, Defendant K.B. & Associates solicited authority from Plaintiff Westco to use the Mattress Warehouse trademark and trade name in Ashland, Kentucky. In 1995, the parties entered an agreement whereby K.B. & Associates could use the trademark and trade name at is Ashland location. In consideration of this, K.B. & Associates agreed it would not use the trademark and trade name at any locations other than its locations at the time of the 1995 agreement. The agreement required K.B. & Associates to receive permission from Westco to use the trademark and trade name at any other locations.

In early 2000, Defendant K.B. & Associates sought permission to use the Mattress Warehouse trademark at a Pikeville, Kentucky location. After negotiations, K.B. & Associates and Plaintiff Westco could not reach an agreement as to the fee K.B. & Associates would pay Westco to use the trademark at the Pikeville location.

Plaintiff Westco says it later discovered that Defendant K.B. & Associates, without permission, was using the Mattress Warehouse trademark and trade name at its Pikeville location. And Westco contends that it thereafter learned that K.B. & Associates had used and is currently using the trademark and trade name at seven other unauthorized locations.

On August 8, 2000, Plaintiff Westco filed this action against Defendant K.B. & Associates. In its complaint, Westco asserts seven causes of action, including (1) breach of contract, (2) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1141(1), (3) false designation of origin and trade name infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (4) dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), (5) trademark infringement under Ohio common law, (6) dilution under Ohio common law, and (7) unfair competition under Ohio common law and Ohio Revised Code § 4165.02.

In answering Plaintiff Westco's complaint, Defendant K.B. & Associates asserted two counterclaims. K.B. & Associates first seeks a declaration that it did not infringe Westco's trademark or otherwise compete unfairly with Westco. Further, K.B. & Associates asks the Court to declare that Westco has abandoned the Mattress Warehouse trademark, thus rendering the trademark void.

On December 18, 2000, Plaintiff Westco filed a motion for partial summary judgment. In this motion, Westco says it is entitled to judgment as a matter of law on

its breach of contract, trademark infringement and unfair competition claims.

On the same date, Defendant K.B. & Associates filed a motion for summary judgment. K.B. & Associates seeks judgment on Plaintiff Westco's entire complaint, as well as its own two counterclaims.

The Court considers the parties' motions below.

## II.

A court may grant summary judgment only if the materials properly before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). In deciding whether the moving party has met this burden, a court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. *60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

## III.

Plaintiff Westco seeks summary judgment on its breach of contract, trademark infringement, and unfair competition claims. Westco says the undisputed facts show Defendant K.B. & Associates broke its licensing agreement regarding the Mattress Warehouse trademark and trade name. With this breach, Westco contends that K.B. & Associates infringed its trademark and competed unfairly as a matter of law.

Defendant K.B. & Associates says it never breached its licensing agreement with Plaintiff Westco. In any event, K.B. & Associates contends that Westco abandoned the Mattress Warehouse trademark and trade name. Thus, K.B. & Associates says it is entitled to summary judgment on all of Westco's claims, as well as its own counterclaims.

As explained below, the Court finds that Plaintiff Westco has shown that Defendant K.B. & Associates failed to abide by the

terms of its licensing agreement with Westco. The Court further finds no merit in K.B. & Associates' abandonment claim. Hence, the Court grants Westco's motion for summary judgment and denies K.B. & Associates's motion for summary judgment.

In 1995, Defendant K.B. & Associates entered an agreement with Plaintiff Westco that placed a substantial limitation on K.B. & Associates' right to use the Mattress Warehouse trademark and trade name ("1995 Agreement"). Specifically, the 1995 Agreement states that K.B. & Associates can only use the trademark and trade name at the locations listed in the Agreement. K.B & Associates agreed not to use the trademark or trade name unless it received Westco's express written consent:

> ... K.B. has the non-exclusive right to use the Trademark only at the Authorized Locations, as more fully described in Exhibit "D" attached. K.B. specifically agrees not to utilize the Trademark at any other locations without first obtaining the express written consent of Westco, which may be withheld at the sole and absolute discretion of Westco.

1995 Agreement, at ¶ 2.

Plaintiff Westco says Defendant K.B. & Associates has violated this 1995 Agreement. Westco says K.B. & Associates is using the trademark and trade name without Westco's permission at various locations in Ohio, West Virginia, and Kentucky.

Defendant K.B. & Associates first denies that it is unlawfully using the Mattress Warehouse trademark and trade name at is new location in Kentucky. Although acknowledging that it uses the Mattress Warehouse trade name at its new location in Pikeville, Kentucky, K.B. & Associates says it has the right to use the trade name at any location in Kentucky. And K.B. & Associates says it does not use the Mattress Warehouse trademark at the Pikeville store.

With regard to the Mattress Warehouse trade name, Defendant K.B. & Associates contends that the 1995 Agreement did not give Plaintiff Westco the right to restrict its use of the trade name. Specifically, K.B. & Associates says Westco has only registered "Mattress Warehouse" as a fictitious name in Kentucky. Such a registration, according to K.B. & Associates, is insufficient to give Westco a substantive right to the Mattress Warehouse trade name.

■ However, the doctrine of licensee estoppel prevents K.B. & Associates from challenging Westco's right to license the trade name.

The doctrine of licensee estoppel provides that a "licensee is estopped from claiming any rights against the licensor which are inconsistent with the terms of the license." 3 Rudolf Callmann, Unfair Competition, Trademark & Monopolies § 19.48 (Louis Altman 4th ed.1998 and 2000 cum. supp.). For example, a trademark licensee cannot challenge a licensor's ownership of a trademark. *Seven–Up Bottling Co. v. Seven–Up Co.*, 561 F.2d 1275, 1279–80 (8th Cir.1977) (finding licensee estoppel prevents licensee from challenging licensor's ownership of trademark).

Here, Defendant K.B. & Associates conceded Westco's rights in the trade name when it entered the 1995 Agreement. As a licensee, K.B. & Associates cannot now claim that Westco lacked the right to license the trade name in the 1995 Agreement.

■ Next, Defendant K.B. & Associates says it does not use the Mattress Warehouse trademark at its Pikeville store. K.B. & Associates asserts that it only uses the name "Mattress Warehouse" at this store, rather than the trademark. The trademark consists of both the name "Mattress Warehouse" and a sunny face design.

But undisputed evidence offered by Plaintiff Westco belies this contention. Defendant K.B. & Associates has used the Mattress Warehouse trademark in connection with various advertisements for the Pikeville store. Indeed, K.B. & Associ-

ates' website features the trademark with a store locator that identifies the Pikeville store. The 1995 Agreement prohibits this unauthorized use of the trademark.

Hence, Defendant K.B. & Associates has used the Mattress Warehouse trademark and trade name in a manner inconsistent with the 1995 Agreement. Unless Plaintiff Westco has abandoned the trademark and trade name, K.B. & Associates broke its contract and violated the trademark laws.

■ Defendant K.B. & Associates also denies that its use of the Mattress Warehouse trademark and trade name at its new locations in Ohio and West Virginia violated its agreement with Westco. Although K.B. & Associates acknowledges using the trademark and trade name at these new locations, K.B. & Associates insists its 1989 agreement with Jer–Wil, Plaintiff Westco's predecessor, allows this use of the trademark and trade name ("1989 Agreement"). In the 1989 Agreement, Jer–Wil granted K.B. & Associates the right to use the Mattress Warehouse trademark and trade name anywhere in West Virginia and in certain Ohio counties.

However, the 1989 Agreement no longer controls Defendant K.B. & Associates' use of the trademark and trade name in Ohio and West Virginia. The 1995 Agreement superseded the 1989 Agreement:

> [The 1995 Agreement] supersedes any and all other agreements, either oral or in writing, between the parties hereto with respect to the utilization of the [Mattress Warehouse trademark and trade name] and contains all of the covenants and agreements between the parties with respect to such utilization in any manner whatsoever.

1995 Agreement, ¶ 3. Thus, the 1995 Agreement now governs K.B. & Associates' use of the trademark and trade name.

Arguing otherwise, Defendant K.B. & Associates says this integration clause in the 1995 Agreement does not set aside the 1989 Agreement. K.B. & Associates says the 1995 Agreement only supersedes previous agreements "between the parties [t]hereto." Because Plaintiff Westco was not a named party in the 1989 Agreement, K.B. & Associates says the 1995 Agreement has no effect on the 1989 Agreement.

This argument does not persuade. In 1993, Jer–Wil, the named party in the 1989 Agreement, assigned its rights in the Mattress Warehouse trademark and trade name to Plaintiff Westco. At that point, Westco stepped into the shoes of Jer–Wil for purposes of the 1989 Agreement. *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir.1986) (stating that "following a proper assignment, the assignee steps into the shoes of the assignor"). Thus, the integration clause of the 1995 Agreement identifies the 1989 Agreement when it makes mention of any previous agreement between Westco and Defendant K.B. & Associates.

Accordingly, Defendant K.B. & Associates' use of the Mattress Warehouse trademark and trade name at its new locations in Ohio and West Virginia violates the 1995 Agreement. Depending on the outcome of its abandonment claim, K.B. & Associates is liable for this unlawful use of the trademark and trade name.

The Court now turns to Defendant K.B. & Associates' abandonment defense. K.B. & Associates says Plaintiff Westco has abandoned both the Mattress Warehouse trademark and trade name through "naked licensing." As a result of this abandonment, K.B. & Associates says it is not liable for breaching the 1995 Agreement or for any other claim made by Westco.

A trademark and trade name operate as indicators of origin, assuring consumers that the goods and services sold thereunder are of a uniform nature and quality. Edward K. Esping, Annotation, *Granting of "naked" or unsupervised license to third party as abandonment of trademark,* 118 A.L.R. Fed. 211 (1994) ("The commercial purpose of a trademark or trade name is to identify, and provide consumers assurances regarding the nature and quality of, the marked goods or services."). In order for a trademark or trade name to provide such an assurance to consumers,

the owner of the trademark or trade name must control the nature and quality of the marked goods and services. Absent such control, the message of the trademark or trade name "is false because without control of quality, the goods and services are not truly genuine." J. McCarthy, McCarthy on Trademarks and Unfair Competition § 18:42 (4th ed.1997) (internal quotations omitted); Edward K. Esping, *supra* ("The granting by the owner of a trademark to a third party of a license to use the trademark, if not accompanied by control by the licensor of the quality of the goods or services sold by the licensee under the license, may cause the trademark to lose its significance as an identifier of goods or services of a particular nature and quality. . . .").

Thus, when an owner licenses a trademark or trade name to third parties, the owner "has the duty to control quality." J. McCarthy, *supra*, at § 18:42; *Gorenstein Enterprises, Inc. v. Quality–Care–USA, Inc.*, 874 F.2d 431, 435 (7th Cir.1989) ("The owner of a trademark has a duty to ensure the consistency of the trademarked good or service."). If the owner does not fulfill this duty, the owner has issued a "naked" or "bare" license. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.1997); *Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 489 (5th Cir.1992); *Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir.1991).

██ Because naked licensing defeats the purpose of a trademark or trade name, a licensor who engages in naked licensing abandons the trademark or trade name. *Gorenstein Enterprises, Inc.*, 874 F.2d at 435; J. McCarthy, *supra*, at § 18:42 ("Thus, not only does the trademark owner have the right to control quality, when it licenses, it has the duty to control quality.").

The Lanham Act specifically provides for the abandonment of a trademark when a licensor engages in naked licensing. 15 U.S.C. § 1127(2) (defining abandonment as "any course of conduct of the owner . . . [that] causes the mark to . . . lose its

significance as a mark."). And courts have applied this provision to trade names as well. *Temple University v. Tsokas*, No. 88–1106, 1989 WL 104823, at *7 (E.D.Pa. Sept.11, 1989) (analyzing applicability of § 1127(2) to claim of trade name infringement); *see also Edwin K. Williams & Co. v. Edwin K. Williams Co.-East*, 542 F.2d 1053, 1059–60 (9th Cir.1976) (analyzing applicability of naked licensing defense to claim of trade name infringement). Further, courts examine cases interpreting the Lanham Act when analyzing claims of trade name or trademark infringement under Ohio law. *The Antioch Co. v. Pioneer Photo Albums, Inc.*, No. C–3–99–270, 2000 WL 988249, at *5 (S.D.Ohio March 13, 2000).

Here, Defendant K.B. & Associates says the 1995 Agreement is a naked license. According to K.B. & Associates, Plaintiff Westco has failed to take any meaningful steps to ensure K.B. & Associates is selling quality products or providing quality services in its stores operated under the Mattress Warehouse trademark and trade name. Specifically, K.B. & Associates offers evidence showing Westco never visited or inspected any of K.B. & Associates' retail stores. Further, Westco allegedly failed to play any role in deciding how K.B. & Associates should handle customer complaints or from whom K.B. & Associates should purchase its inventory.

Even assuming this evidence is sufficient to show the 1995 Agreement is a naked license, Defendant K.B. & Associates is estopped from asserting that its license agreement is a naked license. As previously explained, the doctrine of licensee estoppel stops a licensee from contesting "the validity of the licensor's title during the course of the licensing arrangement." *Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.*, 514 F.2d 665, 670 (5th Cir.1975).

However, Defendant K.B. & Associates insists the doctrine of licensee estoppel does not prevent a licensee from raising a naked licensing defense. In support of

this proposition, K.B. & Associates relies on the United States Court of Appeals for the Sixth Circuit's opinion in *E.F. Prichard Co. v. Consumers Brewing Co.*, 136 F.2d 512 (6th Cir.1943). In *Prichard*, the Sixth Circuit allowed a licensee to raise a naked licensing defense against a licensor, while still applying the doctrine of licensee estoppel to bar the licensee's other challenges to the licensor's ownership of the trademark in question. *Id.* at 521–22.

As Defendant K.B. & Associates acknowledges, in *Prichard* the Sixth Circuit did not discuss whether the doctrine of licensee estoppel stops a naked licensing claim. The court offered no analysis as to the relationship between licensee estoppel and a naked licensing defense. Nevertheless, K.B. & Associates asks the Court to rely on *Prichard's* "implicit" meaning and allow its naked licensing claim despite the doctrine of licensee estoppel.

▇▇ The Court will not do so. The majority of courts to consider the issue in the wake of *Prichard* have found that the doctrine of licensee estoppel bars a licensee from asserting a naked licensing defense. *E.g., Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 547–48 (10th Cir.2000); *Professional Golfers Ass'n of America*, 514 F.2d at 670–71; *E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc.*, 90 F.Supp.2d 277, 291 (S.D.N.Y.2000). The leading commentators have likewise found the doctrine of licensee estoppel applicable to naked licensing claims:

> The licensee is estopped from claiming any rights against the licensor which are inconsistent with the terms of the license. This is true even after the license expires. *He is estopped from contesting the validity of the mark, ... or challenging the license agreement as void or against public policy, e.g., because it granted a naked license.* But he may challenge the licensor's title to the mark based on events which occurred after the license expired.

Rudolf Callmann, *supra*, at § 19.48 (footnotes and citations omitted, emphasis added); 2 Jerome Gilson, Trademark Protection and Practice § 6.03[7] (2000).

Moreover, the rationale undergirding the application of licensee estoppel to naked licensing claims is compelling. By entering a licensing agreement, the licensee covenants not to challenge the licensor's right to issue the license. This covenant includes challenges based on naked licensing:

> By entering into the license agreement, the licensee recognizes the licensor's ownership of the mark and by implication, covenants not to challenge the licensor's rights. *This implied covenant also estops the licensee from claiming that the licensor abandoned his rights by failing to exercise adequate quality control during the terms of the license.*

Jerome Gilson, *supra*, at § 6.03[7] (emphasis added).

And further, a licensee claiming that its own license is a naked license essentially seeks to benefit from its own misfeasance. By asserting a naked licensing defense, the licensee contends that the licensed trademark or trade name has lost its significance as a source of origin because the licensor has failed to police the licensee's operations. Thus, by relying on its own ability to offer inferior or nonuniform goods and services under the trademark or trade name, the licensee seeks to free itself of the constraints imposed by the licensor's ownership of the trademark or trade name. Not surprisingly, the Restatement (Third) of Unfair Competition observes that the case for applying licensee estoppel is strongest in such a case. Restatement (Third) of Unfair Competition § 33 (1995) ("The case for estoppel is strongest when the licensee's challenge rests on its own conduct under the license, *such as ... a claim of abandonment based on inadequate supervision of the licensee by the licensor.*") (emphasis added).

In the absence of any controlling authority from either the United States Supreme Court or the Sixth Circuit, the Court follows the persuasive authority cited above.

Accordingly, Defendant K.B. & Associates cannot raise a naked licensing defense based on Plaintiff Westco's failure to adequately control the quality of K.B. & Associates' operations.

Defendant K.B. & Associates next argues that, even if barred from raising a naked licensing defense based on its own license, it can assert a naked licensing claim arising from Plaintiff Westco's failure to assert quality control over its other licensees. At least one court has accepted this proposition. *STX, Inc. v. Bauer USA, Inc.*, 43 U.S.P.Q.2d 1492, 1501, 1997 WL 337578 (N.D.Cal.1997). And the Restatement (Third) of Unfair Competition also provides some support for allowing such a naked licensing defense. Restatement (Third) of Unfair Competition § 30, comment d (1995).

■ The doctrine of licensee estoppel is equitable in nature. Accordingly, the doctrine is not subject to rigid application. Instead, a court considering the doctrine's application " 'remains free to consider the particular circumstances of the case, including the nature of the licensee's claim....'" J. McCarthy, *supra*, at § 18:63 (quoting Restatement (Third) of Unfair Competition § 30, comment d (1995)).

■ The Court finds that licensee estoppel does not stop Defendant K.B. & Associates' claim that Plaintiff Westco abandoned the trademark and trade name through naked licensing to a third party. The case for applying the licensee estoppel doctrine is "weak when the licensee asserts a lack of control by the licensor over other users." Restatement (Third) of Unfair Competition § 30, comment d (1995).

When a licensor fails to control the quality of goods or services sold by other licensees, a licensee loses the value of its license. In such a situation, the licensor has abandoned the trademark or trade name, rendering it useless as an indicator of origin. Yet the licensee remains subject to the terms of the license, and perhaps even continues to compensate the licensor for its rights to the trademark or trade name. This result is avoided by allowing a licensee to raise a naked licensing claim based on the licensor's relations with third-party licensees.

Accordingly, the Court will permit Defendant K.B. & Associates to raise its naked licensing claim based on Westco's alleged failure to control the quality of a third-party licensee's operation.

■ But Defendant K.B. & Associates faces a "stringent" burden in asserting this claim. *Exxon Corp.*, 109 F.3d at 1075–76. A party asserting a naked licensing claim must show the trademark or trade name "has lost its significance as an indicator of origin." *Id.* at 1079–80; 15 U.S.C. § 1127(2) (defining trademark "abandonment" for purpose of Lanham Act).

■ Defendant K.B. & Associates bases its naked licensing claim on the license agreement between Plaintiff Westco and Richard Good, who operates a retail mattress store in Indiana. K.B. & Associates offers evidence that Westco had almost no contact with Good after issuing him a license to use the Mattress Warehouse trademark and trade name in 1998.

But Plaintiff Westco offers evidence that it competently monitors the quality of Good's retail operation. Westco says that Good's license specifically requires him to sell "name brand mattresses and bedding products, accessories and related items." Westco offers evidence that it polices Good's compliance with this provision through contact with "industry sources" and "name brand mattress and bedding sales representatives." And Westco argues that it need not engage in any additional monitoring because Good, by his own admission, has only sold quality products.

Defendant K.B. & Associates does not dispute this evidence. Rather, K.B. & Associates merely argues that Plaintiff Westco's monitoring approach is insufficient to avoid a finding of abandonment. The Court disagrees.

Courts determine whether a licensor has abandoned a trademark or trade name on a case-by-case basis. The degree of control a licensor must exercise to avoid a finding of abandonment necessarily depends on the factual circumstances at hand, including the nature of the trademark or trade name in question.

Here, the Mattress Warehouse trademark and trade name do not relate to a particular brand of mattress products. Rather, the evidence before the Court shows that the trademark and trade name serve the limited purpose of assuring customers the mattress products sold thereunder are "name brand."

Plaintiff Westco need not engage in extensive control over its licensees to preserve such a limited trademark and trade name. In particular, by monitoring Good's operation through industry sources and name brand mattress product sales representatives, Westco exercised sufficient control over the nature and quality of the mattress products sold under the trademark and trade name.

Moreover, even if the Court found that Plaintiff Westco issued Good a naked license, such a finding would not necessarily establish that Westco abandoned the Mattress Warehouse trademark and trade name in the areas where Defendant K.B. & Associates operates its retail stores. Good operates only one retail store in Indiana. K.B. & Associates, in contrast, operates approximately fourteen retail stores in Ohio, Kentucky, and West Virginia. The record does not include any evidence showing that a naked license in Indiana would diminish the trademark and trade name as a source of origin in this localized market area.

For these reasons, the Court finds no merit in Defendant K.B. & Associates' abandonment defense. The Court therefore grants Plaintiff Westco summary judgment on K.B. & Associates' counterclaim for a judgment that Westco abandoned the Mattress Warehouse trademark and trade name.

Further, the Court grants summary judgment to Plaintiff Westco on its breach of contract claim. As explained above, Defendant K.B. & Associates used the Mattress Warehouse trademark and trade name in a manner inconsistent with its licensing agreement with Westco. Without its abandonment defense, K.B. & Associates is liable for breaching this licensing agreement.

Finally, the Court grants summary judgment to Plaintiff Westco on its trademark infringement claims under federal and state law, its unfair competition claim under state law, and Defendant K.B. & Associates' counterclaim for a judgment that it did not infringe Westco's trademark or otherwise compete unfairly. Defendant K.B. & Associates does not contest Plaintiff Westco's contention that a finding in its favor on its breach of contract claim necessarily establishes trademark infringement and unfair competition. And Westco's argument finds support in *U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1190 (6th Cir.1997), where the Sixth Circuit held that use of a trademark after the expiration of a licensing agreement establishes the "likelihood of confusion" necessary to make out a trademark infringement claim. In the same manner, a licensee's impermissible use of a trademark necessarily creates a likelihood of confusion. *See Hard Rock Cafe Int'l (USA) Inc. v. Morton,* 1999 WL 717995, at *30 (S.D.N.Y. September 9, 1999) ("When a licensee makes both permissible and impermissible use of a trademark in selling merchandise on the Internet, the likelihood of confusion is strong."). Finally, trademark infringement constitutes unfair competition under Ohio law. Ohio Revised Code § 4165.02(A)(2).

## IV.

For the reasons set forth above, the Court grants summary judgment to Plaintiff Westco on its breach of contract, trademark infringement, and unfair competition claims. The Court further grants Westco

summary judgment on Defendant K.B. & Associates's counterclaims.[1]

IT IS SO ORDERED.

---

1. Although Plaintiff Westco did not seek summary judgment on these counterclaims, these claims were fully briefed by the parties. The Court therefore grants summary judgment sua sponte. *K.E. Resources, Ltd. v. BMO Fin. Inc. (In re Century Offshore Management Corp.),* 119 F.3d 409, 412 (6th Cir.1997).