**BIG BOY RESTAURANTS, Plaintiff,**

**v.**

**CADILLAC COFFEE CO., Defendant,**

No. 02–74547.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 5, 2002.

John A. Artz, John S. Artz, Robert P. Renke, Artz & Artz, Southfield, MI, for plaintiff.

Theresa A. Orr, Gifford, Groh, Theresa A. Orr, Jeffrey P. Thennisch, Dobrusin & Thennisch, Birmingham, MI, for defendant.

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PRE-LIMINARY INJUNCTION AND SUA SPONTE GRANTING SUM-MARY JUDGMENT ON THE IS-SUE OF LIABILITY ONLY

ROBERTS, District Judge.

### I. Introduction

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction [Doc. 2] due to Defendant's alleged improper use of Plaintiff's trademark. Defendant filed a response [Doc. 7] and Plaintiff filed a Reply [Doc. 13]. For the reasons stated below, the Court **GRANTS** Plaintiff's Motion.

### II. Facts

Plaintiff Big Boy is known throughout Michigan and is a worldwide provider of food products and services. Big Boy has been making and selling food products under the Big Boy name for over 60 years. Today, there are more than 450 Big Boy restaurants worldwide. *Michaels Decl.* ¶ 4–8. Big Boy has promoted its food products through promotional literature, mailings, radio, television, and print advertisements, and has spent more than 50 million in such nationwide marketing efforts. *Id* at ¶ 8–9.

Defendant Cadillac Coffee is a former supplier for Big Boy's predecessor in interest, Elias Brothers Restaurants, Inc. It provided coffee for sales in packaging with the trademark Big Boy image. The packaging was obtained by Cadillac on behalf of Elias Brothers.

Defendant's relationship with Elias Brothers was terminated in 2000. *Id* at ¶ 15–17. Nonetheless, Defendant retained possession of significant amounts of Big Boy branded packaging materials for the coffee products. Elias Brothers filed for Chapter 11, bankruptcy in 1999 and its $47,000 debt to Defendant was discharged. Through its own admission, Defendant continues to sell packages of coffee bearing the Big Boy logo through certain retailers. Defendant's president admitted to distributing at least 36,000 unauthorized packages (1500 cases at 24 packages per case) of Defendant's coffee labeled as Big Boy coffee. *Compl.,* Exh. 5.

The following dates track ownership and rights to the Big Boy mark, as well as trademark registration:

- On February 14, 1969, Marriott Corporation filed a trademark application for the Big Boy mark and issues as U.S. Reg. No. 913,610 to Marriott Corporation. *See Thennisch Declaration*

and pg. D00009 of the record attached thereto.

- On November 2, 1987, Marriott Corporation assigned the Big Boy mark to Elias Brothers Restaurants, Inc. and recorded assignment of such mark with the U.S. Patent and Trademark Office on May 20, 1988. *Thennisch Declaration* and D00016–D00018.

- On October 18, 2000, Liggett Restaurant Group, Inc. (seller) entered into an agreement with Elias Brothers Restaurants, Inc. (buyer), with the approval of the United States Bankruptcy Court, to sell its rights and assets, including its trademarks. *Plaintiff's Brief in Opposition to Defendant's Motion to Dissolve the TRO and Dismiss* (hereinafter Pl's Br in Opp.), Exh. A. This sale was approved by the Bankruptcy Court on December 8, 2000.

- In an amendment to the agreement, Liggett Restaurant Group, Inc. assigned all of its right, title and interest under the agreement to the parent company, Liggett Restaurant Enterprises, LLC. *Pl's Br in Opp*, Exh. B

- Elias Brothers Restaurants, Inc. assigned numerous trademarks to Liggett Restaurant Enterprises, LLC. *Pl's Br in Opp*, Exh. C.

- On Dec 28, 2000, Liggett Restaurant Enterprises, LLC changed its name to Big Boy Restaurants International, LLC. *Pl's Br in Opp*, Exhs. D and E.

- On various dates from 1971 to 2001, the United States Patent and Trademark Office issued numerous trademarks either directly to or that were indirectly assigned to Plaintiff. *Pl's Br in Opp*, Exh. C.

Based upon Defendant's recent actions, Plaintiff fears that Defendant will ship additional infringing coffee or otherwise manipulate evidence of its activities beyond the level already admitted. As such, Plaintiff brings this action. Its Complaint contains four counts: Count I—Federal Trademark Infringement; Count II—Federal Unfair Competition; Count III—Federal Trademark Dilution; and Count IV–Michigan State Common Law Trademark Infringement and Unfair Competition.

On November 14, 2002 this Court granted Plaintiff's Request for a Temporary Restraining Order and Enjoined Cadillac Coffee from packaging, shipping, distributing, or destroying any Big Boy labeled coffee products. The Court also enjoined Cadillac Coffee from destroying or altering any records with respect to such products.

At the hearing held on December 4, 2002, the Plaintiff requested *sua sponte* summary judgment in addition to preliminary injunctive relief.

### III. Standard of Review

In the Sixth Circuit, when determining whether to issue a preliminary injunction, the Court must consider four factors:

(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction.

*Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir.1994).

With respect to the first factor, some opinions have expressed a need for the court to find a "strong" likelihood of success on the merits. *See United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority,* 163 F.3d 341, 347 (6th Cir.1998). Other opinions have stated that it is enough for the movant to show "serious questions going to the merits and irreparable harm

which decidedly outweighs any potential harm to the defendant if an injunction is issued." *See Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir.1982). Still others emphasize that the four considerations are factors to be balanced rather than prerequisites that must be met. *See Mascio v. Public Employees Retirement System of Ohio,* 160 F.3d 310, 313 (6th Cir.1998). "A district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.,* 119 F.3d 393, 399 (6th Cir. 1997).

## IV. Analysis Request for Injunctive Relief

Defendant has not denied any of Plaintiff's allegations that Cadillac Coffee has used packaging with the Big Boy logo to sell its coffee to the public after it was no longer authorized to do so as a supplier for Elias Brothers. In fact, in a letter from its president, Defendant admitted to selling at least 36,000 of the packages to the public and revealed that unknown amounts of the packaging, formerly in its possession, remain unaccounted for. Further, Defendant argues that it is entitled to use the packaging because Elias Brothers owed it a $47,000 debt-a debt which was discharged in bankruptcy:

> Cadillac Coffee has never disputed that the coffee packaging at issue consisted of residual printed materials that remained in the inventory of Cadillac Coffee stemming from its pre-bankruptcy authorized relationship with Elias Brothers. In other words, Cadillac Coffee was never paid for certain coffee products by Elias Brothers and the $47,000 in indebtedness relating to the coffee products was discharged by the United States Bankruptcy Court for the Eastern District of Michigan.

Defendant's Response Brief, p. 1

Defendant has not demonstrated its authorization for use of the trademarks. Plaintiff, on the other hand, has demonstrated its rights to the trademarks, as discussed in detail below, and has also made the required showing for a preliminary injunction.

### A. Substantial Likelihood of Success on the Merits of its Trademark Infringement Claim and Unfair Competition

The Lanham Act prohibits use of a mark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a). In order to prevail on its trademark infringement and unfair competition claims, Plaintiff must establish that Defendant's actions create a likelihood of confusion regarding the origin of the goods or services offered by Plaintiff and Defendant. *See Therma–Scan, Inc. v. Thermoscan, Inc.,* 295 F.3d 623, 629 (6th Cir.2002), citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir.1997) ("The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.").

The Sixth Circuit has identified eight factors for evaluating "likelihood of confusion" in infringement actions under the Lanham Act, including: (1) strength of the plaintiff's mark, (2) relatedness of the goods involved, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) defendant's intent in selecting a mark, and (8) likelihood of expansion of product lines. *Elby's Big Boy,*

670 F.2d at 648. Not all of these factors will be relevant in every case, and in the course of applying them, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Therma–Scan*, 295 F.3d at 630, citing *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir.1991). Accordingly, the Court will only consider those factors that are most relevant to the present case.

The determination of whether a likelihood of confusion exists is a mixed question of fact and law. *Therma–Scan*, 295 F.3d at 630 *citing Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 624 (6th Cir.1998). Any disputes about the evidence that pertains to the eight factors present a factual issue. *Therma–Scan*, 295 F.3d at 630. In contrast, "the further determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion." *Therma–Scan*, 295 F.3d at 630, *citing Homeowners Group*, 931 F.2d at 1107; *Data Concepts*, 150 F.3d at 624 (explaining that "the balancing of [the factual] findings to determine the ultimate issue of likelihood of confusion is a question of law").

### 1. Strength of Plaintiff's Trademark

Plaintiff has established ownership of the relevant trademarks as evidenced by its registrations with the Federal Patent and Trademark Office. *Pl's Br in Opp*, Exh. C. The Court finds that Defendant's assertions to the contrary are not well founded.

The strength of a mark can be determined by the distinctiveness and degree of recognition in the marketplace. *Homeowners Group*, 931 F.2d at 1107 "The stronger the mark, all else equal, the greater the likelihood of confusion." *Id.*

Defendant does not disagree with Plaintiff's assertions that the promotion and advertising of the Big Boy mark for decades, together with the enormous sales of products bearing its mark, have created tremendous consumer recognition and therefore make it a very strong mark. As such, the Court finds that Plaintiff's mark is distinctive.

The Court also finds that the Big Boy mark is famous. The Lanham Act suggests that courts consider the following factors in determining whether a mark is famous:

(i) The degree of inherent or acquired distinctiveness of the mark;

(ii) The duration and extent of use of the mark in connection with the goods or services with which the mark is used;

(iii) The duration and extent of the trading area in which the mark is used;

(iv) The channels of trade for the goods or services with which the mark is used;

(v) The degree of recognition of the mark in trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought;

(vi) The nature and extent of the use of the same or similar marks by third parties; and

(vii) Whether the mark was registered with the PTO on the principal register.

15 U.S.C. § 1125(c)(1).

It is uncontested that the Big Boy mark has been heavily advertised nationally and internationally for its connection with food services and goods. It is widely recognized in the U.S. and many foreign countries and it is the subject of a Federal Trademark Regulation. Because it is a distinctive and famous mark, it is entitled

to a wide latitude of legal protection. *Kenner Parker Toys Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 352–53 (Fed. Cir.1992). "Famous marks are accorded more protection precisely because they are more likely to be remembered and associated in the public mind than a weaker mark." *Recot Inc. v. M.C. Becton*, 54 U.S.P.Q.2d 1894, 1897, 214 F.3d 1322 (Fed. Cir.2000). The strength of the Big Boy mark, when determining the "likelihood of confusion" issue, strongly favors Big Boy.

### 2. Relatedness of the Goods Involved

The second likelihood of confusion factor examines the relative similarity of the goods involved. Plaintiff notes that the products don't even have to be similar in order to create a likelihood of confusion. *Homeowners*, 931 F.2d at 1108. In this case, however, the parties' goods are identical; both Cadillac Coffee and Big Boy package coffee for consumer retail under the Big Boy trademark. This factor also favors Big Boy.

### 3. Similarity of the Marks

In determining whether the party's marks are similar, the court must compare the marks' appearance, sound, meaning, and the manner in which the marks are used. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183 (6th Cir.1988). Here, Cadillac Coffee has admitted to using actual Big Boy packaging to market its goods. The parties' marks are identical in appearance and meaning. The Court finds that this factor also weighs in Plaintiff's favor.

### 4. Marketing Channels Used

Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion decreases. *Therma–Scan*, 295 F.3d at 636, *citing Homeowners Group*, 931 F.2d at 1110 (explaining that dissimilarities between the parties' customers and their methods of marketing their products reduces the likelihood of confusion). On the other hand, a likelihood of confusion is more likely if the products are sold through the same channels of trade to the same purchasers. *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1541 (11th Cir.1986). Because both parties ultimately sell their goods to the general public, this factor also favors Plaintiff.

### 5. Defendant's Intent on Selecting a Mark

"[The intent of [a party] in adopting [another's mark] is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the Plaintiff], *that fact alone may be sufficient to justify the inference that there is confusing similarity.*" *Ferrari*, 944 F.2d at 1242 (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980)) (emphasis in original). In general, competitors are obligated to select a mark which would avoid all likelihood of confusion with Big Boy. *See WSM, Inc. v. Tennessee Sales, Co.*, 709 F.2d 1084, 1087, n. 1 (6th Cir.1983); *My–T Fine Corp. v. Samuels*, 69 F.2d 76, 77 (2nd Cir.1934).

Defendant, however, free to choose any other mark, chose the Big Boy mark. "When a famous mark is at issue, a competitor must pause to consider carefully whether the fame of the mark, accorded its full weight, casts a 'long shadow which competitors must avoid.'" *Recot*, 54 U.S.P.Q.2d at 1897, 214 F.3d 1322 (citing *Kenner Parker*, 963 F.2d at 353). The Court finds that Defendant used Plaintiff's mark with the intent to trade on Big Boy's good will and reputation.

For these reasons, the Court finds that Big Boy has a strong likelihood of success on its trademark infringement and unfair competition claims.

### B. Substantial Likelihood of Success on the Merits of its Trademark Dilution Claim

■ The Sixth Circuit recently adopted the Second Circuit's test for establishing dilution: (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and, (5) it must cause dilution of the distinctive quality of the senior mark. *V Secret Catalogue, Inc. v. Moseley*, 259 F.3d 464, 468–69 (6th Cir.2001), *citing Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 577 (6th Cir. 2000), *citing Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208 (2d Cir.1999).

For the reasons already stated, the Court has found that Plaintiff's mark is famous and distinctive, and that Defendant has used it commercially in commerce. Furthermore, Defendants do not contest that they began using the mark after it became famous. The only issue is whether they have diluted the mark. The Federal Trademark Dilution Act defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. In applying these terms, the circuits have not adopted a uniform approach. Instead, they apply a somewhat amorphous set of factors to each particular case. *See, e.g., Nabisco*, 191 F.3d at 217.

Dilution "corrodes the senior user's interests in the trademark by blurring its product identification or by damaging positive associations that have attached to it." *Ameritech v. American Information Technologies Corp.*, 811 F.2d 960, 965 (6th Cir. 1987). Plaintiff contends that Defendant's use of the Big Boy logo is likely to tarnish the distinctiveness of the mark as Plaintiff is unable to control the quality or image presented by Defendant's goods offered under the identical mark. Noting the confusion factors argued above, and, in particular, the similarity of the parties' goods, the Court finds that Defendant's use of the mark will likely result in dilution of it. That Plaintiff once licensed Defendant to supply coffee is of no moment.

For these reasons, the Court finds that there is a substantial likelihood of success on the trademark dilution claim.

### C. Irreparable Harm

The second showing a party seeking injunctive relief must make is that it would suffer irreparable injury absent the relief sought. *See Elby's Big Boy*, 670 F.2d at 651. Likelihood of dilution "automatically" establishes irreparable harm, because "[d]ilution is itself an injury which [cannot] be recompensed by money damages." *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 214 (2nd Cir.1999) (citations omitted). Additionally, a substantial financial interest can satisfy the irreparable harm requirement for issuance of a preliminary injunction. *Gougeon Bros.*, 708 F.Supp. at 817 n. 2 (citing *Elby's Big Boy*, 670 F.2d at 651). Plaintiff asserts that it has spent enormous amounts of money promoting the Big Boy mark and notes that no damages can ever compensate for the lost goodwill resulting from Defendant's unauthorized use of the mark in connection with "cheap" coffee sold in "undesirable outlets." Furthermore, Plaintiff argues that if Defendant's use is allowed to continue, Plaintiff will lose control over the public's perception of the reputation of the mark.

The Court finds Plaintiff's argument persuasive, and further finds that the fact of dilution will cause Plaintiff to suffer irreparable harm absent a preliminary injunction.

## D. Balance of Harm

In this case, Plaintiff is the only one that will continue to be injured without issuance of relief. Defendant has not even presented an argument that an injunction will cause it substantial harm. Plaintiff points óut that Defendant has no rights under the Big Boy mark and has its own trademarks available for use on packaging. The balance of harm lies in favor of the Plaintiff.

## E. Public Interest

The policy behind protecting trademarks is to prevent the public from being misled as to the source or origin of the goods or services they are buying. "Trademark infringement, by its very nature, adversely affects the public interest in the 'free flow' of truthful commercial information." *Gougeon Bros.*, 708 F.Supp. at 818. Thus, enjoining Defendant from using a mark confusingly similar to Big Boy's mark would best serve the public interest.

## F. Cadillac Coffee's Defenses are Unpersuasive

Defendant fails to address the factors which courts must consider in evaluating trademark infringement and trademark dilution claims. Also, it fails to address all four factors courts are to consider when a request for injunctive relief is made. *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir.1994). At best, Defendant argues that Plaintiff has failed to establish its rights to the trademarks that protect the packaging. As previously mentioned, the Court is satisfied that Plaintiff has indeed done so.

Defendant's last resort is to argue that the trademarks are unenforceable because of the doctrine of naked licensing. The Court does not agree. It is true that in order for a trademark or trade name to provide an assurance to consumers, the owner of the trademark or trade name must control the nature and quality of the marked goods and services. *Westco Group, Inc. v. K.B. & Associates, Inc.*, 128 F.Supp.2d 1082, 1087–88 (N.D.Ohio 2001), and that absent such control, "the message of the trademark 'is false because without control of quality, the goods and services are not truly genuine.'" *Westco Group, Inc.*, 128 F.Supp.2d at 1088, citing J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:42 (4th ed.1997). Thus, when an owner licenses a trademark to third parties, the owner "has the duty to control quality." *Westco Group Inc.*, 128 F.Supp.2d at 1088 *citing* J. McCarthy, supra, at § 18:42; *Gorenstein Enterprises, Inc. v. Quality–Care–USA, Inc.*, 874 F.2d 431, 435 (7th Cir.1989). If the owner does not fulfill this duty, the owner has issued a naked license. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.1997); *Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 489 (5th Cir.1992); *Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir.1991).

It is also true that when a licensor engages in naked licensing, the Lanham Act does provide for the abandonment of a trademark. 15 U.S.C. § 1127(2) (defining abandonment as "any course of conduct of the owner ... [that] causes the mark to ... lose its significance as a mark.").

Defendant argues here that the trademarks are unenforceable because Plaintiff never inspected, reviewed, policed, or exercised any form of quality control or inspection over Defendant's facilities or packaged products before such products were disseminated to the public. *See Gehlert Affidavit.* However, "the doctrine of licensee estoppel stops a licensee from contesting 'the validity of the licensor's title during the course of the licensing arrangement.'" *Westco Group*, 128 F.Supp.2d at 1088, citing *Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.*, 514 F.2d

665, 670 (5th Cir.1975). A licensee, when entering into a license, covenants not to challenge a licensor's rights in the mark, including challenges based on naked licensing. *Westco Group,* 128 F.Supp.2d at 1089. Based on the Defendant's history with Plaintiff's predecessors, the Court finds that Defendant is estopped from asserting naked licensing.

### G. Summary

The Court finds that Plaintiff has met all of the factors for issuance of a preliminary injunction and the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction.

## V. Summary Judgment Analysis

### A. Introduction

■ During the hearing on December 4, 2002, Plaintiff requested that the Court grant summary judgment *sua sponte* in favor of Plaintiff on all four counts alleged in the Complaint.

As a general rule, the Court is discouraged from doing so without giving advance notice to the parties. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 571–72 (6th Cir.2001). The concern is that it would be impossible to determine whether there is a disputed issue of material fact when a party has not had the chance to develop the record. *Owner–Operator Independent Drivers Ass'n, Inc. v. Bissell,* 210 F.3d 595, 604 (6th Cir.2000). Before summary judgment can be granted against a party, *F.R.C.P. 56(c)* mandates that the party opposing summary judgment be afforded notice and reasonable opportunity to respond to all the issues to be considered by the court. *Bissell,* 210 F.3d at 604, *citing Routman v. Automatic Data Processing, Inc.,* 873 F.2d 970, 971 (6th Cir.1989). *See also Portland Retail Druggists Ass'n v. Kaiser Foundation Health Plan,* 662 F.2d 641, 645 (9th Cir.1981).

However, when there are no material facts in dispute the Court has the discretion to grant summary judgment *sua sponte. Employers Ins. of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 104 (6th Cir.1995). *See also ADR North America, L.L.C. v. Agway, Inc.,* 303 F.3d 653 (6th Cir.2002) (upholding this court's decision to issue summary judgment *sua sponte* where the only notice given to the opponent was through a Reply brief that the opponent did not have an opportunity to address). Here *sua sponte* summary judgment is appropriate, for the reasons discussed below.

### B. Summary Judgment Standard

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### C. Count I (Federal Trademark Infringement), Count II (Federal Unfair Competition), and Count Four (Common Law Trademark Infringement and Unfair Competition)

Section 32 of the Lanham Act governs Federal Trademark Infringement and section 43(a) governs Federal Unfair Competition. 15 U.S.C. §§ 1114, 1125(a). As previously mentioned, the standard of

proof for both of these federal claims is a likelihood of confusion.[1] *See Therma–Scan, Inc.,* 295 F.3d at 629, citing *Daddy's Junky Music Stores,* 109 F.3d at 280; *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,* 78 F.3d 1111, 1116, 1123 (6th Cir.1996) (explaining that the central inquiry in claims of trademark infringement and unfair competition is whether the defendant's use of the plaintiff's mark is likely to cause confusion). As the Sixth Circuit has recently noted:

> Trademark infringement, for example, occurs if a person, acting without the permission of a trademark's owner, "user[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ...." 15 U.S.C. § 1114(1)(a).

> Similarly, a person engages in unfair competition if he or she, "on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in a manner that is "likely to cause confusion ...." 15 U.S.C. § 1125(a)(1)(A).

*Bird v. Parsons,* 289 F.3d 865, 877 (6th Cir.2002).

Likewise, the standard of proof needed to prevail on a Michigan common law action for unfair competition and trademark infringement is a showing of "likelihood of confusion." *Homeowners Group,* 931 F.2d at 1105; *see also Wynn Oil Co. v. Ameri-can Way Service Corp.,* 943 F.2d 595, 605 (6th Cir.1991); *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 833 (6th Cir.1983); *Frisch,* 670 F.2d at 647. For the reasons discussed above, the Court finds that there is no genuine issue of material fact with respect to Count I (Federal Trademark Infringement), Count II (Federal Unfair Competition), and Count Four (Common Law Trademark Infringement and Unfair Competition).

### D. Count III (Federal Trademark Dilution)

As discussed above, to be the claimant in a federal trademark dilution claim must show that: (1) the senior mark is famous; (2) distinctive; (3) the junior use is a commercial use in commerce; (4) it began after the senior mark has become famous; and (5) it causes dilution of the distinctive quality of the senior mark. *V Secret Catalogue, Inc.,* 259 F.3d at 468–69. The above discussion leads to the conclusion that there is no genuine issue of material fact with respect to Count III (Federal Trademark Dilution).

### E. Summary

Defendant has had an ample opportunity to respond to every issue and argue any and all defenses. Plaintiff argued the same issues in its initial Complaint as it did in its Motion for Preliminary Injunction. Defendant has responded to these issues in both its Response to Plaintiff's Motion for Preliminary Injunction, as well as its Motion to Dissolve the Temporary Restraining Order and to Dismiss. In both instances, Defendant has failed to put forth *any* evidence going to the merits of Plaintiff's arguments. The Court finds

---

1. A claim of unfair competition, unlike a claim of trademark infringement, does not require that a defendant use the plaintiff's trademark. *Bird v. Parsons,* 289 F.3d 865, 877 (6th Cir.2002). In this case, however, Defendant's use of Plaintiff's trademark is implicated in all claims.

that the dispute here is not so much over the underlying facts; there is no dispute that Defendant is selling its own coffee and using Plaintiff's marks without permission to do so. The major issue here is a legal one—whether these facts establish a likelihood of confusion and dilution of Plaintiff's mark. As this Court analysis indicates, Defendant has failed to raise even an issue, let along a genuine issue, that there is not a likelihood of confusion or dilution. Accordingly, the Court **GRANTS** summary judgment *sua sponte* in favor of Plaintiff, on the issue of liability only. The case will proceed on the issue of damages.

## VI. Conclusion

In addition to GRANTING summary judgment on liability, the Court hereby **GRANTS** the following relief, having found the factors under F.R.C.P. 65 entitle Plaintiff to injunctive relief:

1. Cadillac Coffee is enjoined from packaging, shipping, distributing or destroying any coffee products in its possession, custody or control labeled as BIG BOY brand coffee;

2. Cadillac Coffee is enjoined from destroying or altering in any way, any evidence of such sales or distribution;

3. Cadillac Coffee is prohibited from any further use of the BIG BOY name and marks;

4. Cadillac Coffee shall cease any and all infringing and counterfeiting activity;

5. Cadillac Coffee shall recall distributed products; and

6. Plaintiff may seize all infringing products from Defendant's possession.

This injunction is binding upon the parties to the action, their officers, agents, servants, employees and attorneys, and upon those in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

**IT IS SO ORDERED.**